May it please the Court, my name is James Patterson and I represent the petitioner in this matter, Ms. Maria Blanca Ramos. This is a petition for review of a decision of the Board of Immigration Appeals, a summary affirmance of a decision by the immigration judge, finding that Ms. Ramos was removable from the United States on a charge of having assisted someone to enter the United States illegally. This petition for review argues that Ms. Ramos was denied a full and fair hearing by the fact that the immigration judge admitted statements made by her that violated notions of fundamental fairness and were undermined in their reliability and probative value by the fact that they were obtained under coercion and duress. Further, the immigration judge erred by not enforcing a subpoena to bring the petitioner's sister to the proceedings as an exculpatory witness. Let me ask you on that point, was there an offer of proof made of what the sister would have said? There was a declaration. It's a detailed declaration. I believe it's four or five pages long as I was reviewing it. That was in front of the immigration judge, wasn't it, the declaration? It was. That was provided to the immigration judge. And he considered it? He doesn't mention it in his decision at all. He does say that he considered all of the exhibits. He doesn't have to mention it, though. Maybe it was before him. He didn't say, I'm not going to consider it or exclude it in some fashion. That's correct. However, it was — it directly contradicted what he found, being that the sister's declaration clearly stated that Ms. Ramos did not know that the woman who was in the car didn't have legal permission to enter the United States. I think if the immigration judge had in fact considered it, he at least needed to address that fact in his decision, that he considered it and discounted it in some way, that it was not probative of anything. I mean, I'm not aware of any rule that requires that he comment on every piece of evidence. Neither am I. Again, however, to let us know, to let this court know what it's reviewing and what he considered, it's impossible to know. Again, this record is voluminous. It is 800 pages long, I believe. Isn't the problem, though, that your client admitted that she did know? She admitted it in a situation where there was coercion and duress, Your Honor. We believe, again, this particular situation is common at the port of entry. Those officers are under a tremendous burden. There is a — just a flood of people coming through, and they've got to process cases as quickly as possible. There is a premium on obtaining admissions from clients, because then they can send the person to smuggle leave back to Mexico. They can push the case into immigration court proceedings and not worry about going to criminal court. In this particular case, there was a pre-interview, prior to the videotaped interview, and the officer indicated that at that pre-interview, as he was discussing the case with her, as he was interviewing the client, interrogating her, before he turned on the videotape, he was agitated at that point with her. He indicated that he had raised his voice prior to the interview. Now, the immigration judge made a big deal out of the fact that he didn't raise his voice in the actual videotaped interview until towards the end of the interview. But the officer admitted that he had done so prior to turning on the videotape as well. This was a situation of a woman who had gone to the doctor for a case of ulcerative colitis, had now been awake all night and all day, had been detained for approximately 17 hours, had not had any food to eat, and was yelled at by an officer. And when she — when he then, at the end — the most telling point for me here is at the end of this interview, the officer asks her, has this all been voluntary, and she begins to express some concerns to him, that she was concerned that she had been hounded to say things that were not necessarily true, rather than stopping things right there and saying, well, wait a minute, let's figure this out. What's going on? Let me call in a supervisor and let's get to the bottom of this. I want to make sure that this is voluntary. If you don't think it is, we need to talk about it. Rather than doing that, he gets defensive, he raises his voice, and then he goes on the offensive in attacking her regarding her receipt of WIC, which, again, is a — beyond the scope of this case, but is not a means-tested public benefit. I believe there was some confusion by this officer of what she was receiving and what she wasn't. And he made a big deal out of something that was not necessarily a big deal. Again, as part of this, making sure that he was exerting influence and coercion over her to make sure that she knew who was in control and that in order to get out of here, she needed to comply with what he was leading her to do. And, again, he led her through — Let me ask you another question regarding the use of the I-213 hearsay statement. Mr. Greenstein has filed a letter dated September 9, 2005, that discusses a new case called Hernandez-Guadarrama v. Ashcroft. Have you had a chance to see that? I did, Your Honor. And he purports to distinguish that case on the grounds that your client wasn't technically admitted into the United States. I think that would be a fair reading of his letter. Do you have a comment on that? Yes, Your Honor. And, again, there appears to be some argument contained in that letter as well. The point that he's making, that that was a deportation proceeding and those aliens are entitled to more constitutional protections, is a point that seems to be clear. However, that doesn't mean that aliens in the situation of my client have no constitutional protections. Again, this Court, in upholding the oath to uphold the Constitution, cannot let a violation that violates notions of fundamental fairness, which undermine the probative value of evidence obtained, and that's language from Lopez-Mendoza. This Court can't let a violation like that go forward, even for, in this case, an alien who is applying for admission. And especially in this case, where my client has lived here for now, going on 19 years, has three U.S. citizen children, ages 15 to 10, and is married to a U.S. citizen, this is not somebody arriving for the very first time. This is someone who resided here in the United States and under color of law at this point. She had a document to allow her to return to the United States, an advance parole document. So, again, I understand the distinction that counsel is making, but it does not completely deprive my client of all of her constitutional rights, and of the right, again, to have any admissions that were made by her conform with notions of fundamental fairness and to not have some indicia that undermine the probative value of these statements that she made. And we believe that there are plenty of indicia here that undermine the probative value. This is, in fact, I believe, more egregious than the Hernandez case, where you have an illegal stop based on appearance. In those types of situations, there is nothing that undermines the actual probative value of the evidence that's obtained. That's the illegal nature of the alien's presence here. In this case, by contrast, the statement that was obtained by coercion and duress is the evidence, and it is undermined by the fact that it was obtained by coercion and duress. Did you say you wanted to reserve two minutes? I do, Your Honor. Thank you very much, Mr. Patterson. Thank you. Good morning. Good morning. May it please the Court, Sol Greenstein on behalf of the Respondent Alberto Gonzalez. The petition for review should be denied. As an arriving alien seeking admission to the United States, the petitioner had to prove under 8 CFR 1240.8b that she was clearly and beyond a doubt entitled to be admitted. She failed to meet her burden of proof. The petitioner wants to suppress the transcript of her interview with Officer Haskell, which establishes that the petitioner clearly knew that she was bringing in a legal alien into the United States. The transcript includes the following dialogue at page 289 in the record. Officer Haskell, did you bring someone that didn't have legal documents to enter the United States? The petitioner, yes. Haskell, and before you crossed the border, did you know that that person didn't have legal documents to enter the United States? The petitioner, yes. Three more times during the course of this interview, the petitioner admitted that she knew that Ms. Sanchez did not have documents to enter the United States, and that's at 295, 297, and 301 in the record. The petitioner even admitted that she knew she was repeating an untruth when she repeated to the primary inspector that Ms. Sanchez had U.S. citizenship, and that's at 297. Mr. Greenstein, let me ask you, if we assume for the sake of discussion that you're correct about the admissibility of the statement to the officers, that we find that it's not coercive, but that we don't buy the distinction you make, Hernandez, Guadarrama v. Ashcroft, if we find that that case applies, could we hold that the I.J. erred in allowing the I-213 in under these circumstances, but that it's harmless in light of the admissions contained in the statement to the officers? Would that make a – would that be a sensible way to go? I'm slightly confused by the question. The question is whether or not the statement should – the transcript should still be admissible. I mean, assuming the transcript's admissible. Yes. Would that render harmless an error by the judge not allowing confrontation of the absent witness? Yes. And the absent witness being Ms. Hernandez. Yes. Right. Right. And I would also note that the case is distinguishable. That's why I say we didn't buy your distinction. We could say it was error but harmless in light of the fact that the confession solves everything. Absolutely. Now, what's your distinction? Well, the distinction is that the Petitioner carried the burden of proof in this case. She had the proof that she was clearly and beyond a doubt entitled to be admitted to this country. Contrastingly, in Hernandez-Guadarrama, the government bore the burden of proof of establishing by clear and convincing evidence that the Petitioner was removable as charged. I don't understand how who has the burden of proof bears on whether she's got the right of confrontation of witnesses against you. Well, she's accorded the right to confront witnesses under – it's a statute. In a criminal prosecution, the government has to prove the case beyond a reasonable doubt. Nevertheless, the defendant gets a right of confrontation. But this isn't a criminal case, and deportation proceedings are similar – removal proceedings are similar in nature. So none of the case law applies. In fact, since the Petitioner is an arriving alien, she is not entitled to the constitutional protections as that of an alien who has been admitted to the United States. She has no right to procedural due process. The cases cited by the Petitioner, namely Choi and Navia Duran, all pertain to deportation proceedings where one has made an entry or in current terminology has been admitted to this country. So the standards for egregiousness simply do not apply. Now, that is not to say that evidence should always be admitted in which it is the alien's burden to establish admissibility. Under certain circumstances, such as one in which physical coercion or another physical procedure that shocks the conscience, evidence should be excluded. However, we don't have that in this case. The Petitioner asserts in her brief that Officer Haskell – What I'm hearing is any kind of evidence at all. Triple hearsay from way out west can show up and that's perfectly fine. Hearsay is admissible, sure. Now I'm making it triple hearsay or five times hearsay.  There's a point where it's no longer any good. Well, then it should be discounted by the IJ as a matter of weight. Discounted? Discounted. It should be accorded less weight by the immigration judge as opposed to simply being excluded. Then what happens when we're asked to review it? Oh, the IJ just discounted it? Or accorded it little weight. It's the same context, let's say, in an asylum application where you get the evidence. In other words, you're back to saying that anything comes in in an immigration hearing. Anything at all. Statements. I didn't ask you that. Yes or no. Can you answer it yes or no? Does anything come in? No. Okay. What doesn't come in besides statements made under coercion? Statements made under physical duress, something that would shock the court. That's coercion. That's coercion. Now, go ahead. Other than that. Well, you wouldn't allow unreliable hearsay in, would you? Sure we would. Well, it would have to be, it would have to just be accorded little weight then. But you'd allow it in. You'd allow anything in. I would once again just fall back on the position that hearsay evidence has always been deemed admissible. And you get it in the context of asylum applications where aliens submit affidavits or letters that state, I heard this from this person who told this person that I'm in danger for this reason. And that's readily admissible in immigration court. And it's accorded whatever weight the judge wants to deem it in light of other countervailing evidence. That's in the record. And in terms of, you know, the transcript of Officer Haskell being hearsay, or Officer Haskell's interview with Ms. Sanchez being hearsay, the Petitioner had the right to cross-examine Officer Haskell about the context. Yeah. But all Haskell is doing is, that's like cross-examining a court reporter. I'm cross-examining a? Court reporter. Madam Court Reporter, did you believe the witness? Is that what you want? That's useless. Go ahead. In terms of the Petitioner's sister's presentation of evidence and the non-enforcement of the subpoena, the Petitioner's argument that the immigration judge should have enforced a subpoena to make the Petitioner's sister appear is without merit since she previously submitted an affidavit on the Petitioner's behalf and was the Petitioner's witness. How about HCFR Section 287.4? Doesn't that say, right, basically, that if there's a subpoena issued and a person doesn't show up, the immigration judge shall bring matter to the attention of the United States Attorney's Office and seek the help of a district judge? Doesn't that what it says? The statute, 1229A before B, however, gives an alien the right to cross-examine witnesses presented by the government. This was not a witness presented by the government, Your Honor. This was, as far as the Petitioner was concerned, a necessary witness for her to produce. Right. That's as far as the Petitioner was concerned, but she clearly was not a necessary witness because the Petitioner submitted a five-page affidavit from her which presumably should have included everything germane to the case. There's no issue, there's no right of cross-examination implicated here. If I may continue, I would also note that in terms of Officer Haskell's testimony at the hearing, Officer Haskell contradicted just about all of the Petitioner's assertions in terms of coercion, being deprived of food. I would point out that the Petitioner's very own statement indicated that she was allowed to leave at 5 a.m. before Officer Haskell's statement was tested, was before the interview with Officer Haskell, but she chose to wait around for her car. The evidence in totality simply does not establish that her interview with Officer Haskell was given under coercion and that the other evidence should have been excluded from the record. Roberts. Thank you very much, Mr. Feinstein. Mr. Patterson, you have about two minutes left in rebuttal. Thank you, Your Honor. Beginning with the point of the sister's testimony, the fact that the Petitioner here had to go forward with some evidence showing that she was not responsible, that she did not have knowledge of this woman's lack of documentation, and the fact that she presented the affidavit and then requested the subpoena and the court actually at one point deferred making a ruling on what they would do if the sister wasn't there at the hearing, and then did not, chose not to enforce the subpoena, severely prejudiced this client. If the sister is there testifying, the judge has to address that evidence right there. She's going to testify. Let me ask you a question about the sister in terms of your client's attorney before the immigration court was given two opportunities to bring in the Petitioner's sister to testify when she did not appear the second time. Counsel did not ask for a continuance or ask the immigration judge to enforce the subpoena. How is this issue then preserved before us? Your Honor, I believe it's preserved in his closing argument. He again mentions the prejudice that they are under. I don't know that I'm going to be able to find it. In the closing argument made by the attorney. Well, you can say that that doesn't work out well for you, but don't you need to say I want a continuance and then have that denied? What he said is she's been prevented from receiving a fair hearing before this court by the sister not being there. And that's at page 228 of the administrative record. I believe that preserves the issue. By telling the judge that since the sister's not here, this hasn't been a fair hearing, that puts the judge on notice that we can make this fair by bringing the sister in. Well, but he doesn't even ask for another continuance. He gets two continuances or whatever. She doesn't show up and then doesn't ask for anything more. I believe he got one and the government got one as far as the continuances. But, again, he's telling the judge that the marital problems have prevented this critical witness from being here. Again, he mentions that she's critical to the case and that she's been prevented from having a fair hearing by that sister not being there. Would I like him to have been more clear? Yes. But I believe he preserved the issue by alerting the judge to the fact that this was not a fair hearing because the sister had not been brought in with the subpoena. Thank you very much, gentlemen. The case just argued is submitted. Good morning.
judges: Silverman, Callahan, Duffy